The People of the State of New York ex rel. Robert Chappel, Respondent, *v.* Gustav Lindenthal, as Commissioner of Bridges of the City of New York Appellant.

Civil Service — New York City — Veteran Volunteer Fireman Discharged from Municipal Position for "Lack of Work" Not Entitled to Reinstatement or to Position Held by Another Employee.    A bridgetender employed upon a bridge connecting the boroughs of Brooklyn and Queens, in the city of New York, who was discharged by the commissioner of bridges for "lack of work," because

the bridge was taken down that a new one might be constructed, is not entitled to a peremptory writ of mandamus commanding the commissioner of bridges to reinstate him in such position or to "transfer him to duty in any other branch of the civil service of the city in such position as he may be fitted to fill, receiving the same compensation therefor," upon the ground "that he is an honorably discharged volunteer fireman" and as such "entitled to the protection of the Civil Service Law, and that his discharge from his position was not for incompetency or misconduct," where the taking down of the bridge in question made unnecessary the positions of bridgetenders during the work of reconstruction and such positions were wholly abolished, since the granting of such mandamus would result either in imposing upon the city the expense of maintaining the relator in his position, when the work for which he had been employed had ceased, or in removing some employee, perhaps better or equally qualified and faithful, to make a vacancy for the relator.

*People ex rel. Chappel* v. *Lindenthal,* 79 App. Div. 43, reversed.

(Argued February 10, 1903; decided February 17, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 9, 1903, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to require the defendant to reinstate the relator in the position of bridgetender in the city of New York.

The facts, so far as material, are stated in the opinion.

*George L. Rives, Corporation Counsel (James McKeen* of counsel), for appellant. It was not the duty of the commissioner on discovering that the Grand street bridgetenders were no longer required to create vacancies for so many of them as happened to be veteran firemen by discharging men who were employed at other bridges. (*Matter of Breckenridge,* 160 N. Y. 107.) The construction of section 21 of the Civil Service Law, that a man not a veteran fireman, but who holds a position in the service after competitive examination, must be discharged in order to make way for a veteran fireman, is at variance with the civil service provisions of the Constitution. (*Matter of Keymer,* 148 N. Y. 219; Const. of N. Y. art. 5, § 9.)

*George L. Glaser* for respondent. The relator stated in his affidavit all necessary issuable facts to bring him within the protection of section 21 of the Civil Service Law. (L. 1889, chs. 208, 283 ; L. 1895, ch. 450.) The defendant, in his answering affidavit, does not controvert or deny any of the material allegations ; therefore, the relator should be granted the relief prayed for in this application. (*Matter of Sullivan*, 55 Hun, 285 ; *People* v. *Board of Police*, 107 N. Y. 236 ; *Matter of N. Y., L. & W. R. R. Co.*, 99 N. Y. 12 ; *People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 187.) The contention that the relator was appointed to a particular office, the tenure of which was to depend on the existence of the Grand street bridge and the duties of which were to be limited to that bridge, is untenable. (*People ex rel.* v. *Morton*, 24 App. Div. 536 ; *Matter of McCloskey* v. *Willis*, 15 App. Div. 594 ; *People ex rel.* v. *Cram*, 34 App. Div. 313.) The power of removal is limited to incompetency or misconduct shown after a hearing, upon due notice, upon stated charges. (*Matter of Stutzbach* v. *Coler*, 168 N. Y. 421.)

Gray, J. The relator seeks reinstatement in the position of bridgetender, in the employment of the bridge department of the city of New York, and he petitions for the writ of mandamus, commanding the commissioner of bridges to so reinstate him, or to " transfer him to duty in any other branch of the civil service of the city in such position as he may be fitted to fill, receiving the same compensation therefor." The grounds for this application are stated to be that he is an honorably discharged volunteer fireman ; that he is entitled as such to the protection of the Civil Service Law, and that his discharge from his position was not for incompetency, or misconduct, but for the reason given of " lack of work." He claims that his employment being within the operation of the Civil Service Law, the commissioner of bridges could not remove him from his position, and that, if the same had become unnecessary, or was abolished, he must transfer him " to any branch of the service of the city of New York for

duty in such position as he may be fitted to fill, receiving the same compensation therefor." He alleges that " there remains to be done in the Bridge Department of the City of New York the same kind of work as done by him and that others not entitled to the benefits and protection of the civil service law are retained to do it." In opposition to the application, the commissioner of bridges showed by his affidavit that the petitioner held the position of bridgetender on a certain bridge, connecting the boroughs of Brooklyn and Queens; that the bridge was taken down, in order that a new one might be constructed, and, when there was no further work for the bridgetenders thereon to do, that all of them were discharged upon the ground, stated in the notice to them, of lack of work; that the position of bridgetender on the particular bridge " was made unnecessary, in the manner above stated, and was abolished for reasons of economy." He alleged that the petitioner's appointment was in the class, known as the labor class, in the classification of the civil service commission; that no vacancy existed in the bridge department, in any position, or employment, which the petitioner was fitted to fill, or in any corresponding, or similar, position, or employment, where there was any need for his services, and that the petitioner and the other bridgetenders employed on the bridge were discharged in good faith, and for no other reasons than those stated.

At the Special Term, the writ of mandamus was granted, to the extent of ordering the reinstatement and assignment to duty of the petitioner, and the order directing its issuance has been affirmed by the Appellate Division, in the second department; the right to the writ being upheld upon the authority of *Matter of Stutzbach* v. *Coler*, (168 N. Y. 416). In the first place, we may dismiss the petitioner's claim that the commissioner should " transfer him to duty in any other branch of the civil service of the City," as absurd. The commissioner, who is the sole defendant, has no such power and the proposition to be discussed is, merely, whether he can be compelled to reinstate the petitioner, under the circumstances

disclosed. I think that the courts below have quite misapprehended the effect of our decision in the *Stutzbach* case and that the decision of this case falls within the principle of what we held in *Matter of Breckenridge* (160 N. Y. 103). In both of those cases the question discussed related to the measure of protection, which the veteran enjoys when holding a position by appointment or employment. In the *Breckenridge* case, the relator held the office of confidential examiner in the fire marshal's bureau, and the office was abolished in good faith and as a matter of economy. His claim of a right, as a veteran, to be appointed to some other position in the department, with the same salary, notwithstanding the abolishment of the office which he had been filling, was denied upon the grounds, that he had not shown, as he was bound to show, that any position was vacant, which he was qualified to assume the duties of, and that the commissioner had shown, by his return to the petition, that there was no position to which he might transfer the petitioner. We held that the petitioner was not vested, under the Veteran Act, with an unqualified right to be retained in the service, whether a position was vacant which he might be fitted to fill, or not, and that, within a reasonable and perfectly fair construction of the law all that a veteran, who loses his office through its abolishment can demand is that he shall not be discharged from the public service, if there is in any branch of that service a vacant position, with equal emoluments, which he is qualified to fill. As to whether such existed for Breckenridge, the return of the commissioner was conclusive. In the *Stutzbach* case, however, the facts were altogether different. Stutzbach was one of fourteen men in the employment of the comptroller, who were dismissed because of the insufficiency of the appropriation, which had been made for the expenses of the finance department. It appeared that he was an honorably discharged veteran and that he was included in the fourteen clerks selected for dismissal by the comptroller, because he was the least competent man in the particular bureau. His right to the reinstate-

1903.]    People ex rel. Chappel *v.* Lindenthal.    529

N. Y. Rep.]        Opinion of the Court, per Gray, J.

ment, which he sought in that proceeding, was sustained in this court ; because the Civil Service Act of 1899, then in force, protected him against removal, except upon charges of incompetency, or misconduct, upon which there had been a hearing. The comptroller, in selecting a certain number of his employés for dismissal, in order to meet the situation of a diminished appropriation, could not include the relator, on the ground that he considered him to be an incompetent clerk. The decision went no further than to hold that, in selecting from among the employés in the bureau those who were to be dismissed, others than veterans should first be taken. In the *Breckenridge* case, the position filled by the relator had been abolished, and, if there was no vacancy to which he could be transferred, a vacancy was not to be created by the removal of some other person for his benefit.

In the present case, the relator has chosen to rest his right to a peremptory writ of mandamus upon the case made by the return to his petition, and, therefore, the facts stated in the affidavit of the commissioner must be regarded as conclusive. They are that the taking down of the bridge in question made unnecessary the positions of bridgetenders during the work of its reconstruction and that those positions were wholly abolished. The relator suffered from no discrimination in removal, but from the fact that there was no work for bridgetenders to perform on the bridge where they had been employed. His claim that, notwithstanding the positions of bridgetenders upon this bridge had been abolished, he was entitled, as of right, to be reinstated in his position, or that some other person, employed in a similar capacity elsewhere in the department, should be discharged, would result, if granted, in accomplishing too gross an injustice. It would result, either in imposing upon the municipality the burden of the expense of maintaining the relator in his position, when the work for which he had been employed had ceased ; or in removing some employé elsewhere, perhaps better, or equally, qualified and faithful, to make a vacancy for the relator. We will not impute to the legislature the intention to sanction

34

such unnecessary injustice; or the absurdity of intending to saddle an unnecessary employé upon the city.

The relator was a laborer; whose employment, necessarily, implied that it would continue while the work lasted for which he was employed. He was employed upon, and for, the bridge in question, with whatever technical fitness was required, and when the reconstruction of the bridge made a bridgetender's employment unnecessary, the position was as effectually abolished for the time as it was in *Breckenridge's* case.

I think the order appealed from should be reversed and that the relator's application should be denied, with costs.

PARKER, Ch. J., O'BRIEN, HAIGHT, MARTIN, VANN and WERNER, JJ., concur.

Order reversed, etc.